# CIRCUIT COURT OF MADISON COUNTY

In re Estate of
Thomas Jackson Smith, Sr.

November 4, 2005

Case No. CH-2889

BY JUDGE DANIEL R. BOUTON

As to the Motion for Reconsideration that is before the court, I have received and reviewed Mr. Waverly Parker's letter of October 19th. I set forth below the rulings of the court on the disputed issues raised by the motion.

*The Issue of How the Ownership of the Fractional Interests*
*Will Be Treated for Purposes of Contribution*

It should first be noted that the court agrees with Mr. Parker's accurate description of the manner in which the ownership interests in the 6.297 acre tract of land were acquired prior to the trial on May 17, 2004. Mr. Wright does not contest the summary of the facts set forth in the motion for reconsideration; therefore, to the extent that any question remains as to whether the court's prior ruling took into account the way in which the various fractional interests were owned and how they were acquired, the court confirms at this juncture that the correct facts have been considered and applied. The court is not persuaded, however, that its prior ruling on this issue is incorrect, nor does the court find that such ruling is in conflict with the court's earlier rulings on the contribution statements that were filed. The procedural history of the case and the statutory provisions that apply support the court's decision to affirm its prior ruling.

To begin with, Mr. Parker properly notes that the death of the decedent is the event that first determines who acquires what property from the augmented estate. Here, following the death of Thomas J. Smith, Sr., the parties to this dispute became the owners of the property that came to comprise the augmented estate based on the principles of law that apply in Virginia when a decedent passes away and when the elective share is chosen under the provisions of § 64.1-13 of the Code of Virginia. In this case, once the owners of the property were identified due to the death of Mr. Smith, the amount of the augmented estate, the amount of the elective share, and the amount of the respective contributions from those responsible for satisfying the elective share were the subject of litigation. After that litigation was concluded, the contribution statements required by § 64.1-16.2(E) were filed.

What occurred after the filing of the statements further supports the court's reasoning in upholding its prior ruling. First, the parties were unable to agree on how the required contributions would be satisfied. Subsequently, before the method of contribution could be resolved by the court, the individual ownership interests of Diane Thompson and Ben Newsome were changed in that they each acquired more augmented estate property by conveyance, rather than as a result of the death of the decedent. After the conveyances to Diane Thompson and Ben Newsome, but prior to the trial on the method of contribution, the court made rulings that allowed for the filing of amended contribution statements; such rulings were consistent with how the augmented estate property was owned at the time that the statements were filed.

Following the procedural steps outlined above, a trial on the method of contribution was conducted. As part of the trial, the value of the property that was designated under § 64.1-16.2(E) to satisfy in whole or in part the required contributions was determined by the court; as required by the statute, the property had to be valued as of the date that the contribution statements were filed. Thus, the court had to utilize a date for valuation that was different from and that followed the date of the death of the decedent. Under the statute, the date that the court was required to use also had to follow the date when the elective share and the amount of the respective contributions were first determined.

In addressing the motion, the first point that should be noted is the statutory requirement that the property be valued as of the date that the contribution statements are filed. In the court's view, in attempting to determine the method of contribution, it would make little sense to ignore changes in the ownership of the property of the augmented estate that occur after the date of death and that are in place at the time that the court must assess the value of the property that has been designated for contribution.

Failing to take into account such changes here would mean that, for purposes of contribution, the court would be treating separately an undivided interest acquired by disclaimer and an undivided interest acquired by conveyance even though each separate interest is in the same tract of land and is owned by the same person. Furthermore, in this context, it must be emphasized that the primary objective of the contribution hearing is not to determine who owns what property as a result of the decedent's death, nor is it to decide who is responsible for what portion of the elective share. Rather, the objective of the contribution hearing is to resolve the method by which the previously adjudicated or agreed upon elective share is to be satisfied. In accomplishing this task, the court must ascertain what augmented estate property is available for contribution, either in whole or in part. How the property is owned and by whom it is owned as of the date that controls the inquiry (the date that the contribution statements are filed) should be considered by the court when it decides how the required contributions will be satisfied.

In reviewing the prior ruling, it must also be stressed that there is no provision in the statute that prohibits a person from satisfying his or her contribution from augmented estate property that is acquired by conveyance from another person rather than by the death of the decedent. Moreover, as noted by Mr. Wright on page two of his Memorandum in Opposition to the Motion for Reconsideration, there is no provision in the statute that prohibits transfers of augmented estate property prior to the date on which the method of contribution is determined; as stressed by him, the statute actually contemplates and allows for such transfers. Finally, there is also nothing in the statute to suggest or indicate that an undivided interest in property acquired by disclaimer and an undivided interest acquired by conveyance should be analyzed separately or treated differently. As emphasized previously by the court, the statute simply requires that, when the court determines the method by which a person will contribute his or her share, that person must actually own the interest in the property to be conveyed and the interest must be "property included in the augmented estate."

As a result of the above, the court concludes that its prior ruling is consistent with the statutory provisions that apply to the question of how the method of contribution had to be determined in this case. The evidence introduced at trial in this case also supports the court's rationale. Therefore, the court declines to modify its ruling and again finds that the undivided interest in the property acquired by disclaimer and the undivided interest in the property acquired by conveyance will not be valued and discounted on a separate basis. For purposes of contribution, the court concludes that Diane Thompson and Ben

Newsome each own a 17.67% undivided interest in the augmented estate property that has been designated on the contribution statements.

### The Issue of Whether Additional Costs and Expenses Should Be Charged to Parcel B

The procedural history of the case is also critical to an analysis of this issue. In the dispute before the court, a petition was first filed under § 64.1-16.2(D). Once the petition was filed, the court was required to "determine the amount of the elective share and the ratable portion of the elective share attributable to each person liable to contribution." As a component of that litigation, the court had to ascertain and compute the amount of the decedent's augmented estate under the provisions of Va. Code § 64.1-16.1. In performing this function, the court had to take into account a number of items, including "funeral expenses, charges of administration . . . taxes, and debts. . . ." After considering the evidence of these items (as well as all of the other types of evidence mandated by the statute), the court ruled on the value of the augmented estate. The court also determined the amount of the elective share and the amount of the contributions that would have to be made by those responsible for such contributions in order to satisfy such share.

On a subsequent date, the method of contribution was litigated by the parties. At that time, the expenses and charges incurred in the administration of the estate again became an issue of dispute. Nevertheless, the reason such expenses were an issue at that stage of the proceedings was because of their potential impact on the fair market value of the fractional interests in the property that had been designated for contribution on the statements that were filed in accordance with § 64.1-16.2(E).

Section 64.1-16.2(E) sets forth the manner in which the method of contribution must be determined. Several key points regarding the statute must be noted in connection with the motion for reconsideration that is before the court. First, in order to resolve the dispute over the method of contribution, the court had to determine the value of the augmented estate property that had been designated on the contribution statements. Second, the value determination had to be made not as of the date of the decedent's death; rather, under the statute, it had to be made on the date that the contribution statements were filed. Third, the value of the property that was designated on the contribution statements in this case was hotly contested at trial. Fourth, as part of the dispute on the value issue, there was evidence at trial that additional administrative expenses and fees had been incurred since the date that such fees and expenses were considered in resolving the issues raised by the petition that was filed under § 64.1-16.2(D).

Most important, there was evidence that the additional fees and expenses had an impact on the fair market value of the fractional interests as of the date that the contribution statements were filed.

Based on the above, the court concludes that its prior ruling was incorrect in that it failed to evaluate the evidence of the additional charges and expenses, and it did not address the impact that such evidence had on the fair market value of the fractional interests in the property that was designated on the contribution statements. Although collateral estoppel and res judicata were not explicitly cited in the court's initial opinion, the rationale articulated by the court suggested or implied that either or both doctrines were being relied on when the court first ruled on the issue. Nevertheless, while the two doctrines are conceptually distinct, Mr. Parker persuasively argues that neither has any application to the disputed issue before the court.

In the present case, the court concludes that it erred in not recognizing that, under the augmented estate statutory scheme, evidence regarding administrative fees and expenses must be considered separately on different dates; moreover, the evidence must be analyzed for different and unrelated purposes. Taking such expenses into account as required by § 64.1-16.1 in order to determine the amount of the augmented estate is an issue that is separate and apart from analyzing the evidence of such expenses in valuing property that has been designated for contribution under § 64.1-16.2(E). The latter issue presents a separate factual question that has to be resolved based on admissible evidence that is relevant to the value of the property on the date that the contribution statements are filed. Notwithstanding the multiple statutory provisions and complex arguments that had to be analyzed and interpreted here, the court's error was relatively simple. In essence, the court failed to weigh properly evidence that was admitted at trial (the additional fees and expenses) and that was relevant to a disputed issue (the fair market value of the fractional interests in the property on the date that the statements were filed). Thus, the reasoning relied upon by the court when it first ruled on this issue was flawed. As a result, the motion for reconsideration on this point is granted.

*Implementation of the Court's Ruling*

Mr. Parker shall prepare a concise order that sets forth the court's rulings on the motion for reconsideration. The provisions of this letter opinion should not be repeated in the order; it should be incorporated by reference. Counsel may endorse the order in any manner deemed appropriate.

The final issue concerns what expenses and charges will be allowed by the court in computing the fair market value of the fractional interests for

purposes of contribution. The court acknowledges that arguments have been submitted on this issue and that charts containing the proposed figures were included in the memoranda that have been prepared by counsel. At this point, however, the court's rulings are now final on whether a discount should be applied, the amount of the discount, and the manner in which the fractional interests will be treated or formulated in computing the fair market value of such interests. Based on such rulings, Mr. Parker and Mr. Wright shall each submit a revised worksheet or chart; it should include the fees and expenses that each believes should be applied and charged to Parcel B. The chart or worksheet should compute the fair market value of the fractional interests in a manner that is consistent with the court's rulings. A short letter or memorandum may be included that reiterates or notes why the expenses listed should be included.

Once the court receives the revised charts, no hearing or further argument will be necessary. The court will review the figures and computations and then conclude this stage of the litigation with a final ruling. The court will identify the additional expenses and fees that will be charged to Parcel B and will determine the fair market value of the fractional interests. Finally, the court will set forth with precision how each person will make his or her contribution to the elective share.